17-632-cv
Wright v. Musanti


# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: February 6, 2018     Decided: April 13, 2018)

Docket No. 17-632-cv

SCOTT WRIGHT,

*Plaintiff-Appellee,*

— v. —

JACQUELINE MUSANTI,

*Defendant-Appellant,*

NYPD OFFICER MICHAEL MANETTA,

*Defendant.*

B e f o r e :

WALKER, LYNCH, and CHIN, *Circuit Judges.*

Defendant-Appellant Jacqueline Musanti appeals from a judgment entered against her following a bench trial in the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*). Musanti was found liable for the battery, assault, and false arrest of Plaintiff-Appellee Scott Wright, stemming from an altercation that arose when Wright cut in front of Musanti as they were walking to their respective Manhattan offices during rush hour. Musanti responded by kicking Wright's legs, and a verbal and physical altercation ensued. Musanti pressed criminal charges, telling the police that Wright was the initial aggressor, but the district court, relying on video footage and the testimony of both parties, found that Musanti had been the initial aggressor and had given false information to the police, resulting in Wright's arrest. The district court awarded Wright nominal, compensatory, and punitive damages. Musanti raises numerous challenges to the judgment. We are unpersuaded, and therefore AFFIRM the judgment of the district court.

---

STEVEN M. WARSHAWSKY, The Warshawsky Law Firm (Tomasz J. Piotrowski, T.J. Piotrowski Law Firm, New York, NY, *on the brief*), *for Plaintiff-Appellee*.

Jaqueline Musanti, *pro se.*

---

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Jacqueline Musanti appeals from a judgment entered against her following a bench trial in the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*). Musanti was found liable for the battery, assault, and false arrest of Plaintiff-Appellee Scott Wright, stemming from an altercation that arose when Wright cut in front of Musanti as they were walking to their respective Manhattan offices during rush hour.

2

Musanti responded by kicking Wright's legs, and a verbal and physical altercation ensued. Musanti pressed criminal charges, telling the police that Wright was the initial aggressor, but the district court, relying on surveillance video footage and the testimony of both parties, found that Musanti had been the initial aggressor and had given false information to the police. The court awarded nominal, compensatory, and punitive damages to Wright.

Musanti raises numerous challenges to the judgment. First, she asserts that the district court did not have subject matter jurisdiction over the lawsuit after it dismissed the sole federal claim, leaving only state law claims. Second, Musanti challenges the finding of liability for false arrest, arguing (i) that the court erred in denying her motion for summary judgment; (ii) that the district court erred when, after initially granting a directed verdict for Musanti as to the false arrest claim, it retracted the directed verdict and allowed the claim to go forward; and (iii) that the district court's ultimate finding in favor of Wright on the false arrest claim was clearly erroneous. Third, Musanti objects to various evidentiary rulings made by the district court. Finally, Musanti argues that the district court erred in awarding punitive damages.

As explained below, we are unpersuaded by Musanti's various arguments. Accordingly, we AFFIRM the judgment of the district court.

**BACKGROUND**

The facts presented below are drawn from the district court's findings of fact, which are amply supported by the evidence. On the date of the incident, at approximately 9:00 a.m., Wright, a slightly built man, was walking to his office, where he was the account manager for an online marketing company. At the same time, Musanti, a medium-sized woman, was walking to her office, where she worked for an apparel company. Though Wright and Musanti worked in neighboring buildings, they had never met before this incident.

As often happens on crowded New York streets, Wright's and Musanti's paths crossed. Initially, Musanti was walking a few paces behind Wright and to his right. She then crossed in front of him and continued walking diagonally to his left. After a few more steps, Wright passed Musanti and continued walking directly in front of her, no more than a few feet ahead. As a result, Musanti accidentally stepped on Wright's heel and stumbled. She then intentionally kicked Wright's heel, prompting a verbal confrontation between the two pedestrians. During the exchange, Musanti kicked at Wright, though she did not

4

make further contact with his person. Wright did not respond to Musanti's action, instead turning to enter his office building, but Musanti continued addressing aggressive statements to him and blocked his path into his building. When Wright lightly pushed Musanti out of his path, she began hitting, kicking, and scratching him, and pinned him against the building's facade. At that point, Wright grabbed Musanti's collar and pulled her to the ground. A security guard from Wright's office pulled him off Musanti and released him. Wright attempted again to enter his office building, but Musanti again blocked his path. Eventually, Wright was able to enter his building and proceed to his office.

After Wright went into his building, New York Police Department officers arrived on the scene and questioned Musanti and other bystanders about the altercation. Musanti told the police that she thought Wright had purposefully cut her off and that she kicked him because she felt personally under attack. While Musanti was being questioned, seven to nine other officers entered Wright's office and arrested him, escorting him in handcuffs through his office and the lobby of the building, and into the back of a police car, where he remained for roughly forty-five minutes. When asked by the police what she wanted to do, Musanti responded that she wanted to press charges. As a result, Wright was

5

driven to a nearby precinct, where he spent about forty minutes in a holding cell, and was then released with a desk appearance ticket.

Wright was subsequently arraigned and charged with two counts of assault in the third degree, one count of attempted assault in the third degree and one count of harassment in the second degree. To defend himself against these charges, he paid $5,000 for a lawyer and several hundred dollars for an investigator. After approximately five court appearances, the charges were dismissed because of Musanti's repeated failure to appear as a witness.

Wright then brought this lawsuit, initially alleging a federal claim against the arresting officer, Michael Manetta, pursuant to 42 U.S.C. § 1983, in addition to four New York state law claims against Musanti. Subject matter jurisdiction was premised on federal question jurisdiction for the § 1983 claim, with supplemental jurisdiction extending to the state law claims. The district court dismissed the § 1983 claim on the pleadings on February 5, 2016,[1] leaving only the state law assault, battery, false arrest, and malicious prosecution claims against Musanti. After dismissing the sole federal claim, the district court determined that it retained subject matter jurisdiction over the state law claims based on diversity

---

[1] Wright does not challenge that dismissal on appeal.

jurisdiction.[2] Diversity jurisdiction existed, the court ruled, because, although

both Wright and Musanti were citizens of New York at the time of the incident,

Musanti had subsequently moved to Tennessee, where she still resides. Indeed,

in her answer to Wright's complaint, Musanti denied Wright's allegation that she

was a citizen of New York, and signed the answer using her Tennessee address.

Accordingly, the district court concluded that Musanti was a citizen of

Tennessee, while Wright remained a citizen of New York, thus creating complete

diversity of citizenship between the parties. Additionally, Wright had alleged

over $75,000 in damages in his complaint. The district court reasoned that,

although in a typical case the basis for diversity jurisdiction must exist at the

outset of the action, that principle does not apply in a case where the court's

---

[2] Wright posits, in a footnote, that the district court could have retained the state law claims pursuant to supplemental jurisdiction even after dismissing the federal claim. "[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). In considering whether to retain jurisdiction over state law claims, the district court must weigh various factors, such as judicial economy, convenience, fairness, and comity. *Id.* at 1191. Because, in this case, the district court did not conduct such an analysis, and because we affirm the court's ruling regarding diversity jurisdiction, we do not consider whether retaining Wright's state law claims based on supplemental jurisdiction would have been within the district court's discretion.

jurisdiction had been previously, and properly, premised on federal question jurisdiction. Accordingly, the court retained jurisdiction over the state law claims, which proceeded to discovery. The court later granted summary judgment for Musanti on Wright's malicious prosecution claim, but allowed the battery, assault, and false arrest claims to go forward.

At a one-day bench trial, the district court heard testimony from Wright and Musanti. Wright testified in support of his case, but did not call Musanti or any other witnesses to the stand. At the close of Wright's case, Musanti, acting *pro se*, requested a directed verdict in her favor. The district court granted the request as to the false arrest claim, concluding that Wright had failed to present evidence regarding how the arrest was initiated. However, the battery and assault claims remained, so Musanti took the stand in support of her defense. During cross-examination of Musanti, the court revisited its earlier dismissal of the false arrest claim, observing that it had failed to allow Wright to object before making its decision. At that point, Wright did object to Musanti's request for a directed verdict, arguing that he could elicit testimony from Musanti that would go to the initiation of the arrest. He explained that he had failed to call Musanti as an adverse witness only because he knew Musanti would testify during her case

8

in chief and he did not want her, as a *pro se* party, to have to testify twice. Had Wright known that Musanti would move for a directed verdict at the close of his case in chief, he would have called her as an adverse witness. The district court accepted these explanations and withdrew its previous ruling, noting that while the court still had reservations about Wright's ability to prove his case, he should be given the opportunity to do so through cross-examination of Musanti. Musanti did not object to that ruling.

In its subsequent written opinion, the district court found Musanti liable for assault and battery against Wright because she had kicked, hit, scratched, and threatened Wright several times during the incident, and had not acted in self defense in doing so. The court cited several reasons why it did not credit Musanti's testimony that she had kicked Wright in self-defense. First, surveillance video that had captured the first seconds of the scuffle contradicted Musanti's tesimony; second, Plaintiff's counsel had successfully impeached Musanti on cross-examination, further undermining her credibility; and finally, Musanti's demeanor was "excitable, impulsive and defensive," while Wright was "in all respects credible," because his "testimony was consistent and his demeanor was measured and calm." *Wright v. Musanti*, No. 14-CV-8976, 2017

9

WL 253486, at *2 (S.D.N.Y. Jan. 20, 2017). Accordingly, the court credited Wright's testimony that he had unintentionally cut off Musanti, and found that Musanti had been the initial aggressor in the ensuing altercation.

The court further found that Musanti had given false information to the police regarding her role in the encounter by obscuring the fact that she initiated the intentional contact and downplaying her aggressive conduct. The court concluded that in giving false information to the police, and in requesting that the police press charges, Musanti had caused Wright to be falsely arrested.[3] As damages, the district court awarded Wright nominal damages of $1.00 for the assault and battery, and compensatory damages of $5,000 for the false arrest. Additionally, the court awarded Wright $10,000 in punitive damages, finding that Musanti had acted with "willful disregard of the interests of others." *Id.* at *13.

Musanti appeals the judgment and damages award against her.

---

[3] The district court made clear that this finding applied only to the time period after Musanti informed the police that she wished to press charges; Musanti was not held liable for the initial arrest of Wright by the police.

## DISCUSSION

### I.     Subject Matter Jurisdiction

Musanti first argues that the district court lacked subject matter jurisdiction over her claims after the only federal claim, brought against the arresting officer pursuant to  42 U.S.C. § 1983, was dismissed. "[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 398 (2d Cir. 2017) (alteration in original), quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). If the record reveals that the lower court was without jurisdiction, the appellate court has "jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.*, quoting *Bender*, 475 U.S. at 541.

Thus, before considering Musanti's challenges on the merits, we must first determine whether the district court properly asserted diversity jurisdiction over Wright's state law claims against Musanti. Because the court's ruling turned entirely on a legal conclusion, our review is *de novo*. *Cohen*, 873 F.3d at 398.

"It is a principle of first importance that the federal courts are tribunals of limited subject matter jurisdiction." 13 Charles Alan Wright & Arthur R. Miller,

11

*Federal Practice and Procedure* § 3522 (3d ed. 2017). Article III of the Constitution authorizes federal court jurisdiction over several types of cases, including those "arising under" federal statutes (what is referred to as federal question jurisdiction), and those involving "Citizens of different States" (what is referred to as diversity jurisdiction). U.S. Const. art. III, § 2. Congress has limited diversity jurisdiction to cases involving an amount in controversy of more than $75,000. 28 U.S.C. § 1332(a); Federal Courts Improvement Act of 1996, Pub. L. 104-317, § 205, 110 Stat. 3847, 3850.

Musanti does not dispute that by the time the district court asserted its diversity jurisdiction, she and Wright were citizens of different states. She contends, however, that the district court lacked jurisdiction because diversity jurisdiction did not exist at the time the action was commenced. In support of her argument, Musanti cites to cases in which we have held that "[w]hether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) (alteration in original), quoting 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3608, at 448–49 (2d ed. 1984); *see also Universal Licensing Corp. v. Paola del Lungo, S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002)

12

("In an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced.").

That rule was developed, however, in cases where diversity jurisdiction is the only basis for federal subject matter jurisdiction. In such cases, the rule plays a vital role: if diversity of citizenship did not exist when the action was filed, federal court jurisdiction over the case would never have attached, and for a federal court to take any action in the case would be "an unconstitutional usurpation of state judicial power." 13 Wright & Miller, § 3522 (3d ed.). That was the situation in both *Universal Licensing Corp* and *Linardos* . In those cases, the *only* available basis for federal jurisdiction at the initiation of the case was diversity jurisdiction. *Universal Licensing Corp.*, 293 F.3d at 581; *Linardos*, 157 F.3d at 946. Accordingly, because the factual basis for diversity jurisdiction did not exist at the time those lawsuits were filed, the court never had jurisdiction over the cases.

But we are not presented with such a case in this appeal. Here, the propriety of the district court's jurisdiction was established at the outset based on federal question jurisdiction, because Wright alleged a federal law claim in his complaint. *See Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009), quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("Under the longstanding

13

well-pleaded complaint rule, . . . a suit 'arises under' federal law . . . only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'") (alteration in original). It was not until that federal claim was subsequently dismissed that the issue of diversity jurisdiction arose.

It is true that, when Wright commenced the present lawsuit, *diversity* jurisdiction did not exist, as the complaint alleged that both Wright and Musanti were citizens of New York. But federal question jurisdiction was present when the case was filed, and before that basis for jurisdiction dissipated, the factual prerequisites for diversity jurisdiction had come into being, and had been established by the pleadings. By the time Musanti answered Wright's complaint, she had already moved to Tennessee, and the existence of diversity jurisdiction was documented by her denial of the allegation in Wright's complaint that she was a citizen of New York, her use of her Tennessee address when signing her answer, and Wright's allegation of the requisite amount in controversy. Thus, unlike the cases cited by Musanti, in which subject matter jurisdiction did not attach when the case was filed, the district court here had jurisdiction at the outset of the case, and continued to have jurisdiction at all times thereafter. We therefore conclude that, in a case such as this, where federal question jurisdiction

was properly asserted at the outset of a case and diversity jurisdiction attached before federal question jurisdiction dissipated, the standard rule that diversity jurisdiction only exists where diversity is present at the time of the original complaint does not apply.

Although our Court has not previously addressed this exact situation, the underlying principle has been established in other contexts. For example, we have held that in cases removed to federal court from state court on the basis of diversity jurisdiction, diversity of citizenship need be established only at the time of removal, and not at the time that the initial pleading was filed in state court. *See, e.g., Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed."); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56–57 (2d Cir. 2006). In other words, diversity need not be established until diversity becomes necessary to establish federal subject matter jurisdiction. *See also Knop v. McMahan,* 872 F.2d 1132, 1138 (3d Cir. 1989) (refusing to vacate a judgment, even though diversity jurisdiction did not exist at the outset of a case, "[b]ecause the district court had diversity jurisdiction over the parties at the time of trial and when judgment was entered").

Moreover, although we have previously held that, when the basis for jurisdiction is not properly alleged, leave to correct a technical defect should be freely given, *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997), several cases stand for the proposition that a plaintiff need not necessarily amend the complaint in order to adequately allege the diversity of citizenship. For instance, we have reversed a district court order dismissing a complaint for lack of subject matter jurisdiction when the facts for diversity jurisdiction existed, but had not been properly pled in the complaint. In doing so, we recognized that "[a] failure to allege facts establishing jurisdiction need not prove fatal to a complaint." *Id.* at 102. In *Canedy*, the plaintiff alleged only that she was a "resident" of a different state than the defendant, which was not sufficient to establish citizenship. 126 F.3d at 103. Thus, we requested affidavits from the parties attesting to their citizenship. We found that those affidavits adequately established complete diversity of citizenship, and as a result we "deem[ed] the pleadings amended so as to properly allege diversity jurisdiction." *Id.*[4]

_____

[4] We were recently presented with a similar scenario in *Maitland v. Fishbein*, 712 F. App'x 90, 92 (2d Cir. 2018). Although the plaintiffs in *Maitland* had not amended their complaint to properly allege diversity of citizenship, we "reviewed the entire record," concluded that the record established complete diversity, and therefore "deem[ed] the Maitlands' pleadings amended to properly allege

16

That is essentially what the district court did in the present case. When it became apparent that the original basis for federal jurisdiction — federal question jurisdiction — no longer existed, the court asked the plaintiff to explain on what basis the court could still exercise jurisdiction over the case. In response, the plaintiff demonstrated the facts necessary to establish the existence of diversity of citizenship. The court, upon reviewing the record before it, found that there was an adequate basis upon which to exercise diversity jurisdiction, in essence deeming the jurisdictional basis of the complaint constructively amended. Although the district court could have allowed Wright to amend his complaint to allege diversity of citizenship, we see no reason to find error where the facts of citizenship were clear and the continuity of subject matter jurisdiction was never in question.

Our conclusion is also supported by considerations of judicial efficiency. As the Supreme Court has observed, "[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), considerations of finality, efficiency, and economy become overwhelming." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75

---

diversity jurisdiction." *Id.*

17

(1996). The Seventh Circuit has held, in a case where a claim against one set of defendants was supported by diversity jurisdiction and another claim, brought against different defendants, was supported by federal question jurisdiction, that "a plaintiff should not be required to bring those claims in separate complaints." *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 959 (7th Cir. 1988); *see also Baker v. J. C. Penney Co.*, 496 F. Supp. 922, 924 (N.D. Ga. 1980) (refusing to impose the "anomalous result of not allowing a plaintiff to do in one federal suit what he would be entitled to do in two separate federal suits"). That principle holds true here: Wright explained that, if the district court dismissed the case for lack of subject matter jurisdiction, he would simply refile the complaint, alleging diversity jurisdiction instead of federal question jurisdiction. App. at 50. It would be a waste of resources to require Wright to refile the same lawsuit, changing only the basis for jurisdiction, when the district court was perfectly capable of analyzing the basis for its own jurisdiction. Such inefficiency would be multiplied were we to require dismissal after a full trial on the merits has been conducted and judgment imposed, only for the plaintiff to refile the same case in a new complaint properly alleging diversity jurisdiction. "To permit a case in which there is complete diversity throughout trial to proceed to judgment and then

18

cancel the effect of that judgment and relegate the parties to a new trial . . . because of a brief lack of complete diversity at the beginning of the case would be a waste of judicial resources." *Knop*, 872 F.2d at 1139 n.16. There is even less justification for such inefficiency here, where federal jurisdiction was *never* lacking.

Accordingly, we conclude that the district court correctly asserted diversity jurisdiction over Wright's state law claims.

## II.    False Arrest

Turning to the merits, Musanti challenges three of the district court's decisions regarding Wright's false arrest claim. First, Musanti argues that the district court erred by failing to grant her motion for summary judgment. But we have held that "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed," unless the district court's error at the summary judgment stage was "purely one of law." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 201 n.2 (2d Cir. 2014) (internal citation omitted). Because the denial of summary judgment in this case was based on disputed factual issues, such as whether Musanti made false statements to the police, and because the court

19

subsequently found for Wright after a trial on the merits, Musanti cannot appeal the court's denial of summary judgment.

Next, Musanti urges that the district court erred in retracting its grant of her motion for judgment as a matter of law on Wright's false arrest claim after he rested his case. She argues that, had she known the district court would reconsider its ruling, she would not have testified in her case in chief. She therefore requests that we vacate the judgment against her and remand for a new trial. Musanti did not properly preserve that claim, however, as she failed to object when the court withdrew its initial grant of the directed verdict, and she never filed a motion for new trial at the district court. The "request must be denied because it was not raised before the trial judge." *Patrolmen's Benevolent Ass'n of NYC v. City of New York*, 310 F.3d 43, 51 n.5 (2d Cir. 2002); *see also R.R. Love Ltd. v. TVT Music, Inc.*, 282 F. App'x 91, 93 (2d Cir. 2008) ("It is well settled that such a claim cannot be raised for the first time on appeal").

In any event, Musanti's argument lacks merit. We have recognized that a court has authority "to allow a party to attempt to cure an alleged deficiency in its proof before the matter is submitted to the decisionmaker," *S.E.C. v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013), which is precisely what the court did in

this case. We are unconvinced by Musanti's assertion that she was "severely prejudiced," Appellant's Br. at 4, by the court's decision because she would not have testified in her own defense had she known the district court might retract its ruling. Had the district court given Wright the opportunity to respond to Musanti's motion, as it should have done, he would have had the opportunity to call Musanti as an adverse witness on his own case, whether or not she elected to testify on hers.

Finally, Musanti argues that the evidence was insufficient to support a finding for Wright on his false arrest claim. "On appeal from a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*." *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 216 (2d Cir. 2016).

To prevail on a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975). "The great weight of authority, including New York, recognizes the rule that neither actual malice nor want of probable cause is an

21

essential element of an action for false imprisonment." *Id.* at 457. Rather, the defendant may establish probable cause as an absolute defense to the action. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

Musanti correctly argues that, under New York law, "liability may not be premised on merely furnishing information to law enforcement authorities." *D'Elia v. 58-35 Utopia Parkway Corp.*, 843 N.Y.S.2d 339, 341 (2d Dep't 2007). However, "[o]ne who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest" *Id.* (alteration in original). The district court found that Musanti gave false information to the police by failing to inform them that she initiated the physical contact, and by intentionally downplaying her aggressive conduct. The court also found that in requesting that the police press charges, Musanti had induced the police to arrest Wright, because Wright likely would have been released but for her request. Those findings are supported by the trial testimony, and are not clearly erroneous. Accordingly, we affirm the district court's judgment for Wright on his false arrest claim.

## III. Evidentiary Rulings

Musanti argues that the district court erred by precluding her from calling Evelyn Serrano, a witness to the incident, as a trial witness via Skype or telephone. However, a witness's testimony generally must be taken in open court, and Musanti has not identified any "compelling circumstances" that warranted "contemporaneous transmission from a different location." *See* Fed. R. Civ. P. 43(a). Musanti also argues that the district court erred by not allowing her to hire a *per diem* attorney to take Serrano's deposition, which she could have used at trial. But the record does not reveal that Musanti ever sought to depose Serrano, much less that she requested, and was denied, permission to use an attorney for the deposition. Thus, these claims are meritless.

## IV. Punitive Damages

Finally, Musanti challenges the district court's award of punitive damages. The imposition of punitive damages is properly committed to the sound discretion of the district court, and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding. *See Payne v. Jones*, 711 F.3d 85, 100 (2d Cir. 2013). Under New York law, there is "no formula by which the finder of fact must determine punitive damages." *Softel,*

23

*Inc. v. Dragon Med. & Sci. Commc'ns Ltd.*, 891 F. Supp. 935, 945 (S.D.N.Y. 1995). The only requirement is that the "punitive damages should bear a reasonable relationship to the wrong committed." *Id.*

Musanti asserts that the award of punitive damages was erroneous because there was no evidence of the requisite "high degree of moral turpitude" required to impose that sanction. Appellant's Br. at 21. But this unadorned argument is premised on Musanti's version of the facts, which the district court was free to, and did, reject. Once the court found that Musanti had deliberately battered a stranger and then made false statements to the police, resulting in said stranger's arrest — findings that were sufficiently supported by the evidence — it was well within the court's discretion to find that conduct amply egregious to merit punitive damages.

Musanti also argues that the district court improperly considered her husband's salary and assets when determining the amount of punitive damages. In awarding $10,000 in punitive damages, the court considered Musanti's testimony that she had virtually no income, that her husband made around $65,000 a year, that the couple owned a home and two cars, and that her husband had debt in the form of student loans. The court's opinion makes clear that it

24

seriously considered the amount of punitive damages to award, including requesting financial documents from Musanti, which Musanti failed to provide. New York law permits the fact finder to consider evidence of a defendant's wealth when setting the amount of punitive damages, in order to determine what amount would be sufficient to punish that particular defendant and deter "others of similar mind." *Rupert v. Sellers*, 368 N.Y.S.2d 904, 910 (4th Dep't 1975). Musanti presents no authority to support her assertion that consideration of her entire household's income and assets was improper.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.